IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PRIVATE CAPITAL GROUP, INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> MARCELL SHINTUN DAREUS, <br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS <br><br><br> Case No. 2:13-CV-00018 |

This matter is before the Court on Defendant Marcell Dareus' Motion to Dismiss for Lack of Personal Jurisdiction. For the reasons discussed below, the Court will deny Defendant's Motion to Dismiss.

## I. BACKGROUND

The following facts are relevant to Defendant's Motion to Dismiss. Unless otherwise noted, they are taken from Plaintiff's Memorandum in Opposition[1] and presented in the light most favorable to Plaintiff as the nonmoving party.

Plaintiff Private Capital Group, Inc. ("PCG") is a Utah corporation organized and existing under the laws of the State of Utah.[2] Defendant is a professional football player under

---

[1] Docket No. 18.

[2] Docket No. 14, at 5.

contract with the Buffalo Bills in Buffalo, New York, and permanently resides in Fairfield, Alabama.[3]

On July 27, 2012, Solaris Capital, LLC, Andrew McClellen, TDC Lending, LLC (the "Lenders") and Defendant entered into a Secured Promissory Note, Loan Agreement, and All-Assets Security Agreement (collectively referred to as the "Loan Documents") wherein Defendant borrowed $1,267,436 ( the "Loan").  The Loan Agreement states that the Loan Documents shall "be governed by and construed in accordance with the laws of the state of Utah, and by Borrower's acceptance hereof Borrower submits to the jurisdiction of the Federal and District Courts located in Salt Lake County, Utah."[4]

Plaintiff negotiated the Loan with Defendant on behalf of the Lenders.  Plaintiff obtained various documents, including Defendant's player contract, bank statements, and credit report, to verify Defendant's identity, net worth, cash flow, and/or ability to repay.  Plaintiff also had several telephone conferences with Defendant to arrange for the details of the Loan.

Defendant contends that he did not sign the Loan Documents.  According to Defendant, the loans are a result of a sham orchestrated by a third-party to use his identity to defraud entities such as Plaintiff.  Defendant has provided multiple affidavits supporting his contention.  Plaintiff, however, has provided evidence to support its claims.

## II.  PERSONAL JURISDICTION STANDARD

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings . . . and affidavits, that burden can be

---

[3] Docket No. 12, at 2.

[4] Docket No. 14, at 28.

met by a prima facie showing."[5]  "The allegations in the complaint must be taken as true to the

extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting

affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie

showing is sufficient notwithstanding the contrary presentation by the moving party."[6]

"In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must

present a compelling case demonstrating 'that the presence of some other considerations would

render jurisdiction unreasonable.'"[7]  "[I]n the absence of a full evidentiary hearing, a district

court relying on documentary evidence in its consideration of a motion to dismiss may not weigh

the factual evidence."[8]  "[W]hatever degree of proof is required initially, a plaintiff must have

proved by the end of trial the jurisdictional facts by a preponderance of the evidence."[9]

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a

plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the

exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[10]

---

[5] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008)).

[6] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990) (quoting *Behagen v. Amateur Basketball Ass'n of the US,* 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied,* 471 U.S. 1010 (1985)).

[7] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[8] *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

[9] *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (quoting *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir. 1978)); *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("plaintiff has the ultimate burden of establishing jurisdiction"); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (regardless of procedure "[e]ventually . . . plaintiff must establish jurisdiction . . . either at a pretrial evidentiary hearing or at trial").

[10] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

"It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[11]

## III. DISCUSSION

A due process analysis of personal jurisdiction is a two-step inquiry. First, the Court must consider whether Defendant has sufficient "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there."[12] Second, "if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."[13]

### A. MINIMUM CONTACTS

The "minimum contacts" standard can be established through a finding of either general jurisdiction or specific jurisdiction. Both will be discussed below.

#### 1. GENERAL JURISDICTION

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[14] These activities must be continuous and systematic to justify a finding of general jurisdiction.[15]

---

[11] *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[12] *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

[13] *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation marks and citation omitted).

[14] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[15] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Defendant correctly argues that he has no contacts with Utah that would allow a finding of general jurisdiction, and Plaintiff does not argue to the contrary. Therefore, Plaintiff has failed to meet its burden to prove general jurisdiction.

### 2. SPECIFIC JURISDICTION

The evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'[16]

The Utah Legislature has determined the Utah long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[17] The Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[18]

"In order to assess whether minimum contacts occurred in a contract case, we look at 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"[19]

In *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, the plaintiff alleged breach of contract, breach of implied contract, unjust enrichment, and fraud in the inducement and claimed the

---

[16] *Soma* 196 F.3d at 1297 (quoting *Nat'l Petroleum Mktg., Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995)).

[17] Utah Code Ann. § 78B-3-201(3) (2008).

[18] *Soma*, 196 F.3d at 1298 (quoting *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)); *see also Farr West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).

[19] *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479).

defendant failed to pay for products received from the plaintiff.[20]  The defendant argued that the plaintiff did not provide competent proof of a contract.[21]  The court held: "while we are aware that [defendant] claims he has never seen the Agreement, much less signed it, at this stage of the litigation we are bound to construe all contested evidence in favor of AST."[22]  The court found that the contract produced by the plaintiff clearly referenced the defendant and "evidence[d] the prior negotiations and future consequences of an intended continuing business relationship, the terms of which would be governed by Colorado law."[23]  Even though the contract was unsigned, the court found it to be prima facie evidence of a contract between the parties.[24]

While "a contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum," the *AST* court found several facts that supported personal jurisdiction.[25]  In particular, the court found that the defendant's actions in approaching the plaintiff about becoming plaintiff's distributor and then forming an ongoing business relationship to facilitate the agreement were significant.[26]  These conditions "constitute[d] a business relationship . . . that include[d] 'prior negotiations and contemplated future consequences, along with the . . . parties' actual course of dealing.'"[27]  The court held that:

---

[20] *Id.* at 1055.

[21] *Id.* at 1058.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 1059.

[26] *Id.*

[27] *Id.* (quoting *Burger King*, 471 U.S. at 479).

where a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. In such circumstances, absent a showing that exercising jurisdiction over [defendants] would "offend traditional notions of fair play and substantial justice," [j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state.[28]

Similarly here, Defendant's sole argument against jurisdiction is that the Loan Documents were fraudulently procured and that he has no connection with the State of Utah.[29] Defendant contends that Plaintiff submitted no admissible evidence in support of its claim that Defendant signed the Loan Documents. Contrary to Defendant's contention, the Court finds the following evidence included in the Loan application supports Plaintiff's claims: a copy of Defendant's driver's license,[30] the bank statements from CapStar Bank,[31] Defendant's credit report,[32] Smith's acknowledgment of the Carter loan,[33] and Ms. Niger Purdie's notarization of the Secured Promissory Note.[34] This evidence provides additional support for Plaintiff's claim that Defendant signed the Loan Documents.

Additionally, Plaintiff's evidence shows prior negotiations and contemplated future consequences of obtaining the loan. Defendant's actions, determined through Plaintiff's evidence, establish a substantial connection with Utah. The Loan Documents provided by

---

[28] *Id.* (internal quotations omitted).

[29] Docket No. 19, at 3.

[30] Docket No. 18-1, at 94; *see also id.* at 19.

[31] *Id.* at 95; *see also id.* at 21-27.

[32] *Id.*; *see also id.* at 29-32.

[33] Docket No. 13, at 4.

[34] Docket No. 18-1, at 57.

Plaintiff state the Secured Promissory Note was negotiated in the State of Utah, made by Borrower and accepted by Lender in the State of Utah, and the proceeds of the note were disbursed from Utah.[35]

The Court is not at liberty to weigh the conflicting evidence at this time. Therefore, any conflict must be resolved in favor of Plaintiff at this stage of the litigation, "notwithstanding the contrary presentation by the moving party."[36] In sum, the Court finds that Plaintiff has met its burden on this factor.

### B. TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

If the Court finds that Defendant had adequate minimum contacts with the forum state, the Court must also determine that personal jurisdiction is reasonable in light of the circumstances surrounding the case or, in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[37]

> Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies.[38]

When dealing with the reasonableness of exercising personal jurisdiction

> the analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong

---

[35] *Id.* at 55.

[36] *Kennedy*, 919 F.2d at 128; *see also AST Sports Sci., Inc.*, 514 F.3d at 1058.

[37] *Burger King*, 471 U.S. at 476.

[38] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).

showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].[39]

Defendant's sole argument that the exercise of jurisdiction would be unreasonable is that Plaintiff did not make a prima facie showing that Defendant signed the Loan Documents. However, as previously discussed, Plaintiff's evidence, if accepted as true, is sufficient to make a prima facie showing of a valid contract, and this issue must be resolved in Plaintiff's favor at this time.[40] Defendant makes no other argument to support his contention that this Court's exercise of personal jurisdiction over Defendant would offend traditional notions of fair play and substantial justice. Considering the above listed factors, the Court finds that the exercise of personal jurisdiction would be reasonable in light of the circumstances.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 11) is DENIED.

DATED  August 2, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[39] *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279-80 (10th Cir. 2005) (alterations in original) (quoting *OMI Holdings, Inc.*, 149 F.3d at 1092).

[40] *Kennedy*, 919 F.2d at 128; *see also AST Sports Sci., Inc.*, 514 F.3d at 1058.